# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:24 CR-00287-O |
| | § | |
| STEPHANIE HOCKRIDGE, a/k/a | § | (02) |
| STEPHANIE REIS, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT STEPHANIE HOCKRIDGE'S
## MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S
## <u>OBJECTION TO HER DESIGNATION OF EXPERT WITNESSES</u>

### TABLE OF CONTENTS

Table of Authorities ........................................................................................................................ ii

Introduction ..................................................................................................................................... 1

Legal Standard ................................................................................................................................ 3

Discussion ....................................................................................................................................... 3

    I.    Mr. Abshier's Testimony Is Not Cumulative ................................................................... 4

        A.    The Government Should Not Permitted to Smuggle in Expert Testimony Through a Lay "SBA Employee" Witness .................................................................................... 4

        B.    Even If the Government Had Designated Its Own SBA Expert, That Would Not Make Mr. Abshier's Testimony Inadmissible .................................................................... 5

    II.    Mr. Abshier's Testimony Is Not Only Relevant, But Critical to Ms. Hockridge's Defense ........................................................................................................................... 7

        A.    Mr. Abshier's Proffered Testimony Provides Helpful Context Regarding the Regulatory Framework Under Which Ms. Hockridge Operated Her Business ....................... 7

        B.    Mr. Abshier's Testimony Is Admissible to Establish That Ms. Hockridge Was Permitted to Collect Fees from Borrowers ........................................................... 10

    III.    Mr. Appelbaum's Testimony Is Likewise Relevant and Material to Ms. Hockridge's Defense .......................................................................................................................... 14

Conclusion .................................................................................................................................... 15

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbot v. Trustmark National Bank*,
  No. 4:22-CV-00800, 2022 WL 14813716 (S.D. Tex. Oct. 3, 2022) ......................................... 8
*Demary v. Freedom Trucks of America LLC*,
  No. 2:22-CV-00792, 2024 WL 5011623 (W.D. La. Dec. 6, 2024) .......................................... 5
*Earl v. Boeing Co.*,
  2021 WL 3140545 (E.D. Tex. July 26, 2021) ...................................................................... 10
*Express Rent a Car LLC v. U-Save Financial Services, Inc.*,
  2009 WL 10679830 (E.D. La. Apr. 24, 2009) ........................................................................ 5
*Novick v. Shipcom Wireless, Inc.*,
  946 F.3d 735 (5th Cir. 2020) .................................................................................................. 7
*Pedersen v. Kinder Morgan Inc.*,
  724 F. Supp. 3d 725 (S.D. Tex. 2024) .................................................................................... 7
*Sanchez v. Correctional Healthcare Co.*, LLC,
  2023 WL 2904582 (W.D. Tex. Apr. 11, 2023) ..................................................................... 10
*United States v. Abdallah*,
  629 F. Supp. 2d 699 (S.D. Tex. 2009) .................................................................................... 8
*United States v. Arthur*,
  51 F.4th 560 (5th Cir. 2022) ................................................................................................... 3
*United States v. Okorji*,
  2018 WL 8756433 (N.D. Tex. June 1, 2018) ..................................................................... 4, 5
*United States v. Pacific Gas & Electric Co.*,
  2016 WL 3268994 (N.D. Cal. June 16, 2016) ........................................................................ 5
*United States v. Strange*,
  23 F. App'x 715 (9th Cir. 2001) ............................................................................................. 8
*United States v. Thrush*,
  738 F. Supp. 3d 902 (E.D. Mich. 2024) ............................................................................... 12
*United States v. Van Dyke*,
  14 F.3d 415 (8th Cir. 1994) .................................................................................................... 5
*Vasquez v. Jones*,
  496 F.3d 564 (6th Cir. 2007) .................................................................................................. 6

**Rules**

Federal Rule of Evidence 401 ........................................................................................................ 7
Federal Rule of Evidence 702 .................................................................................................... 3, 8

**Regulations**

*Business Loan Program Temporary Changes*; *Paycheck Protection Program as Amended by Economic Aid Act*,
  86 Fed. Reg. 3692 (Jan. 14, 2024) ........................................................................... 12, 13, 14

**INTRODUCTION**

Once again, the Government tries to keep the whole story from the jury. The Government has alleged a wide-ranging conspiracy to commit PPP fraud with losses exceeding $65 million. But to prevent Ms. Hockridge from responding to those sweeping allegations in full, the Government asserts that its own case-in-chief will "focus" on a limited "list of loans" that the Defendants were "directly involved in submitting, or causing to submit, to the lenders and the SBA"[1]—and that Ms. Hockridge's evidence, including expert witnesses, should likewise be limited to those loans. Obj. (Doc. #135) at 3–4.

But Ms. Hockridge is entitled to put the Government's list of loans in the broader context—namely, that they constitute less than two dozen out of more than nearly 2,000 loan applications that the VIPPP program (which Ms. Hockridge supervised) assisted borrowers in submitting, and the more than 800,000 loan applications that Defendants' companies assisted lenders in processing. Indeed, the Government's chief cooperating witnesses, Eric and Anthony Karnezis—for whose fraud the Government seeks to blame on Ms. Hockridge—submitted more than $100 million in loan applications that the Government now claims were fraudulent. And the Government has argued that Ms. Hockridge and others "had a substantial incentive to process and approve *as many PPP loan applications as possible*, as quickly as possible"; that they engaged in a scheme to submit "***numerous***" fraudulent loan applications; and that "***[m]any*** fraudulent loans came

---

[1] The Government's limited "list of loans," however, is ever-changing. As recently as today, Friday, May 2, 2025 (13 days before trial), the Government added another loan to its list. Ten days earlier, on Wednesday, April 23, 2025, the Government added three more borrowers (and an indeterminate number of loan applications) to its list. And five days before that, on Friday, April 18, 2025, the Government added one borrower to its list and removed another. The Government's constantly evolving list of loans continues to frustrate and complicate Ms. Hockridge's efforts to prepare to confront the Government's evidence at trial.

through the 'VIPPP' pipeline that Hockridge oversaw in 2021." Mot. (Doc. #76) at 3 (emphasis added).

Among the critical questions in this case is whether Ms. Hockridge actually knew those loan applications were fraudulent, or whether she instead acted in good faith reliance on SBA regulations that permitted lenders to rely upon borrowers' certifications as to the accuracy of their representations. To assist the jury in answering those questions, she will call two expert witnesses. David Abshier, who has over 35 years of experience in the financial services industry, will explain the complex legal and regulatory landscape surrounding the PPP program, including the responsibilities imposed on borrowers, lenders, and lender service providers (but not on companies like Ms. Hockridge's). In addition to providing the jury context to help understand the evidence in this matter, Mr. Abshier's testimony will also help demonstrate Ms. Hockridge's good faith in helping process PPP loan applications—including, for example, that she had a good faith basis to believe that she could rely on borrowers' representations and that any due-diligence obligations (limited as they were) belonged to lenders, not those who assisted lenders or borrowers, such as Ms. Hockridge and her company.

In addition, former FBI Special Agent James Applebaum will explain that the vast majority of applications submitted through Ms. Hockridge's VIPPP referral program contained the documents required under SBA guidelines and regulations, and that the Government's basis for claiming the loans were fraudulent (e.g., that the EIN of certain applicants reflected that the applicant's business was not in existence before February 2020) were not facts that Ms. Hockridge could have had any basis to know. Such testimony is vital to establish that Ms. Hockridge could not have knowingly or intentionally employed the VIPPP program to further the vast, fraudulent

conspiracy that the Government's indictment describes. Thus, Government's arguments for excluding the testimony of Messrs. Abshier and Appelbaum fail.

## LEGAL STANDARD

"Federal Rule of Evidence 702 permits opinion testimony from a witness 'qualified as an expert by knowledge, skill, experience, training, or education' if the proponent shows by a preponderance that the testimony (1) 'will help the trier of fact to understand the evidence or to determine a fact in issue,' (2) 'the testimony is based on sufficient facts or data,' (3) 'the testimony is the product of reliable principles and methods,' and (4) 'the expert has reliably applied the principles and methods to the facts of the case.'" *United States v. Arthur*, 51 F.4th 560, 571 (5th Cir. 2022) (quoting Fed. R. Evid. 702).[2]

## DISCUSSION

The Government does not dispute that Messrs. Abshier and Appelbaum are qualified as experts, that their opinions are based on sufficient facts or data, that their opinions are the product of reliable principles and methods, or that they have applied their expertise in rendering their opinions. Those objections have therefore been forfeited.

Rather, the Government's objections are focused on whether the testimony of Messrs. Abshier and Appelbaum will be helpful to the jury. Because their proffered testimony easily clears that low bar, the Court should reject the Government's objections.

---

[2] As explained in Ms. Hockridge's expert designation filing, she does not claim or concede that the entirety of the testimony to be offered by each witness qualifies as expert opinion testimony under Federal Rule of Evidence 702; rather, each witness will offer a mix of summary and expert opinion testimony. (Doc. #133) at 1. To the extent that the testimony the Government challenges is not expert testimony, its objection should be overruled for that reason.

## I. Mr. Abshier's Testimony Is Not Cumulative

The Government argues that Mr. Abshier's testimony is needlessly cumulative because the (1) there is no "dispute" about Mr. Abshier's testimony that only "lenders" (not loan processing service providers like Ms. Hockridge) "were responsible for originating PPP loans under related SBA requirements" and were "held harmless," and (2) the Government plans to introduce its own lay witness, an SBA employee, to describe the same PPP regulatory framework that Ms. Abshier describes. Obj. (Doc. #135) at 4–5. Those arguments fail for two reasons: first, the Government has not designated its own expert witness to testify on those matters; and second, because Ms. Hockridge is entitled to present her own witness to explain the PPP's requirements, without having to rely upon any witness the Government might attempt to present to discuss those same topics.

### A. The Government Should Not Permitted to Smuggle in Expert Testimony Through a Lay "SBA Employee" Witness

Contrary to the Government's claim, Mr. Abshier is the *only* witness who can testify about the PPP regulatory and legal framework in this trial. The Government cannot elicit that testimony from an SBA employee about the scope and application of the SBA guidance and regulations, for whom the Government failed to provide an expert designation. *See* Sch. Order (Doc. #57) ¶ 4 (requiring the Government to "file a written designation of its expert witnesses . . . no later than March 31, 2025"). Testimony related to a "complex and intricate regulatory scheme" requires specialized knowledge and therefore requires an expert witness, not a layperson. *United States v. Okorji*, No. 3:15-cr-00559-O, 2018 WL 8756433, at *1 (N.D. Tex. June 1, 2018) (cleaned up). There is no doubt that the PPP involved such a "complex and intricate regulatory scheme."

In *Okorji*, for example, the Government attempted to offer lay testimony about various aspects of Medicare operations and billing. *Id.* This Court held that, because Medicare operates within a "complex and intricate regulatory scheme," such testimony required "technical or

4

specialized knowledge" and thus was admissible only through an expert. *Id.*; *see also id.* ("Testimony that describes 'definition[s] and requirements' of Medicare and its home healthcare program, Medicare's 'billing process,' Medicare's 'process' of referring patients to home health care, and Medicare's billing 'prohibitions' would be highly technical and specialized testimony."); *see also United States v. Van Dyke*, 14 F.3d 415, 422 (8th Cir. 1994) ("Here, we are convinced that elaboration by Ms. Curtin would clearly have assisted the jury in understanding the regulation and defendant's reasons for asserting that he had not violated its provisions."); *United States v. Pac. Gas & Elec. Co.*, 2016 WL 3268994, at *1 (N.D. Cal. June 16, 2016) ("Accordingly, expert testimony to help the jury digest this complex regulatory framework is necessary and warranted.").

### B. Even If the Government Had Designated Its Own SBA Expert, That Would Not Make Mr. Abshier's Testimony Inadmissible

Rule 403 allows (but does not require) courts to exclude ***needlessly*** cumulative evidence, but its application is "quite narrow, and it should be applied to exclude evidence only cautiously and sparingly." *Demary v. Freedom Trucks of America LLC*, No. 2:22-CV-00792, 2024 WL 5011623, at *3 (W.D. La. Dec. 6, 2024). Mr. Abshier's testimony does not fall in the "narrow" category of needlessly cumulative evidence.

Thus, even if the Government had designated an expert on the same topics, Mr. Abshier's testimony would still not be cumulative. The Government is not entitled to give a one-sided presentation of the applicable regulatory framework at trial. Whatever testimony the Government's unidentified expert would have given, Ms. Hockridge would have been entitled to rebut that testimony with her own expert witness. *Cf. Express Rent a Car LLC v. U-Save Fin. Servs., Inc.*, No. CV 07-4356, 2009 WL 10679830, at *1 (E.D. La. Apr. 24, 2009) (Rule 403 does not forbid all cumulative evidence, only evidence that is needlessly cumulative). The mere fact that there may be some overlap between the testimony of two witnesses does not make the latter witness's

testimony needlessly cumulative, especially when it is being proffered by an opposing party. *Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007) ("The mere fact that one other witness . . . has testified to a particular fact . . . does not render other testimony on that point 'cumulative.'").

The Government also misleading suggests that that Mr. Abshier intends to offer testimony *only* on matters that are undisputed. It is true that Mr. Abshier will testify that "lenders were responsible for originating PPP loans under relaxed SBA requirements and [describe] how lenders were held harmless" for relying upon borrower certifications under SBA guidelines—all of which the Government concedes is true. Obj. (Doc. #135) at 5. But aside from that concession, the Government has not agreed to any stipulations or instructions regarding the requirements of the PPP, and Mr. Abshier's testimony will cover other important aspects of the PPP and how those applied to the conduct alleged in this case, as detailed in his report. *See, e.g.*, Abshier Rpt. (Doc. #133-2) ¶¶ 38–39 (explaining that SBA guidance permitted borrowers to calculate their maximum loan amount using gross income, before deducting business expenses); ¶¶ 60–63 (explaining that lenders retained BSA/AML obligations that could not be delegated to third parties; ¶¶ 64–67, ¶¶ 71–73 (explaining that Blueacorn and Body Politix did not have fraud detection responsibilities).[3]

Finally, even if an SBA employee might have some limited ability to testify regarding the PPP regulations and guidance, the Government has not disclosed the identity or anticipated

---

[3] Indeed, in yesterday's jury instruction conference, the Government refused to even engage with Ms. Hockridge's counsel on any potential instructions relating to the requirements of the PPP program, instead claiming that any such instructions somehow amounted to a recitation of Ms. Hockridge's theory of defense. *See* Proposed Instructions (Doc. #143) at 43–52; *e.g., id.* at 48 n.27 (asserting that Ms. Hockridge's request for an instruction on the requirements of the governing statute for borrowers to report their "income" somehow amounted to "an improper judicial narrative of the Defendant's version of the *facts*, and it should be rejected"). Notably, *none* of Government's objections assert that any of Ms. Hockridge's proposed instructions are not correct statements of the law.

testimony of any such person. As such, it is not possible for the Court or Ms. Hockridge to assess whether any such testimony would be needlessly cumulative of Mr. Abshier's. Indeed, the Government expressly acknowledges that its objection is not ripe. Obj. (Doc. #135) at 5–6.

## II. Mr. Abshier's Testimony Is Not Only Relevant, But Critical to Ms. Hockridge's Defense

As explained above, Mr. Abhiser's testimony is not needlessly cumulative as the Government suggests. But the Government is also wrong to suggest that his testimony does not clear the yet-lower bar of being "relevant" under Rule 401. *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 740 (5th Cir. 2020). Indeed, Evidence is relevant if it has "any tendency" to make a material fact more or less likely to be true. Fed. R. Evid. 401. Mr. Abshier's proffered testimony is not merely relevant; indeed, it is vital to addressing several of the important issues at the heart of this case.

### A. Mr. Abshier's Proffered Testimony Provides Helpful Context Regarding the Regulatory Framework Under Which Ms. Hockridge Operated Her Business

Mr. Abshier's report provides helpful, undisputedly accurate information to help the jury understand the regulatory context in which Ms. Hockridge operated her businesses. Her compliance with SBA regulations and guidance is undisputedly relevant to her good faith, which is a defense to the charges against her. Proposed Instructions (Doc. #143) at 41–42 (Proposed Instruction No. 26, Good Faith/Negligence).

Contrary to the Government's misstatement of the law, an expert may testify about a regulatory framework, and also whether a party complied with that framework. For example, in *Pedersen v. Kinder Morgan Inc.*, the court held that a defendant's expert could properly testify, based on is "knowledge and experience as an actuary," whether the ERISA plan at issue in the case "conform[ed] to applicable laws and regulations." 724 F. Supp. 3d 725, 739 (S.D. Tex. 2024);

7

*see also United States v. Strange*, 23 F. App'x 715, 717 (9th Cir. 2001) (noting that "expert testimony regarding Medicare regulations and reimbursement procedures" is "entirely appropriate for an expert"); *United States v. Abdallah*, 629 F. Supp. 2d 699, 750 (S.D. Tex. 2009) (finding expert testimony "about the Medicare payment system and how it functioned, helping the jury understand the rules and regulations under which [the defendant] submitted its claims," was relevant and reliable testimony); Fed. R. Evid. 702, cmte. note, 2000 Amendments (explaining that the modern Rule 702 "does not alter the venerable practice of using expert testimony to educate the factfinder on general principles").

Mr. Abshier's testimony about the PPP regulatory framework is relevant for multiple reasons. First, Mr. Abshier explains the underwriting obligations that applied to **lenders**—which were significantly relaxed for the PPP program, including by allowing lenders to rely on information provided by borrowers—and that those relaxed obligations did not extend to third-party vendors like Ms. Hockridge's company. *See, e.g.,* Abshier Rpt. (Doc. #133-2) ¶¶ 28, 57–59, 71–73. That testimony provides context for Ms. Hockridge's work assisting borrowers package and submit PPP loan applications. Specifically, the testimony helps explain why Ms. Hockridge believed in good faith that fraud detection was a **lender** responsibility, not hers, and that the Government, as a matter of law, permitted lenders and their third-party vendors to rely on borrowers to provide truthful information in PPP loan applications. *Cf. Abbot v. Trustmark Nat'l Bank*, No. 4:22-CV-00800, 2022 WL 14813716, at *2 (S.D. Tex. Oct. 3, 2022) (holding that expert testimony about defendant banks' compliance with Anti-Money Laundering Act was probative circumstantial evidence of whether the banks knowingly participated in a scheme to defraud investors). The fact that Ms. Hockridge reasonably understood that fraud detection would be carried out further down the line not only by FinCap, LLC (operating as Blueacorn) but also by

the lenders and the SBA itself helps to explain why she acted in good faith in assisting the borrowers in submitting their loans, in reliance upon their certifications of the applications' accuracy. *See* Proposed Instructions (Doc. # 143) at 43–44 (Proposed Instruction No. 27, Reliance on SBA Guidance); *id.* at 45–46 (Proposed Instruction No. 28, Reliance on Borrower Certifications).

      Second, Mr. Abshier's testimony provides context that will contravene the testimony of a key Government witness, Eric Karnezis. Mr. Karnezis will likely testify about a supposed conversation with Ms. Hockridge in which she allegedly instructed him on how to commit fraud through the PPP. In reality, Ms. Hockridge merely explained the PPP rules to Mr. Karnezis. Mr. Abshier's summary of the regulatory framework will show that Ms. Hockridge's statements to Mr. Karnezis were truthful and accurate, or at least made in good faith based on her lay understanding of the PPP regulations—which, again, is a complete defense to the charges against her.

      Third, Mr. Abshier will detail how frequently PPP regulations and guidance changed over the course of the time that Ms. Hockridge assisted borrowers and lenders with loan applications. *E.g.* Abshier Rpt. (Doc. #133-2) ¶¶ 22–43. Ms. Hockridge and her husband's businesses likewise changed over time based on these regulatory shifts, and so Ms. Abshier's testimony will help the jury understand the reasons for those changes. In turn, that understanding will help demonstrate to the jury why Defendants did not engage in a single, unified course of conduct as alleged in Count One of the Indictment. Indictment (Doc. #3); *see generally* Br. in Supp. of Mot. to Dismiss (Doc. #92); Order (Doc. #137) (denying motion without prejudice pending development of the facts at trial).

      Finally, the Government objects to Mr. Abshier's report on the grounds that an expert may not be used to testify that a defendant was confused about her legal duties due to the complexity

9

of a regulatory scheme. Obj. (Doc. #135) at 8. But that is not Mr. Abshier's testimony. Mr. Abshier has not offered any opinions that Ms. Hockridge was confused about her legal duties under the PPP regulations, due to the regulations' complexity or otherwise. Mr. Abshier will explain the ambiguities and changes in PPP guidance over time, but he will not offer an opinion on Ms. Hockridge's state of mind.

### B. Mr. Abshier's Testimony Is Admissible to Establish That Ms. Hockridge Was Permitted to Collect Fees from Borrowers

Mr. Abshier's testimony also speaks to the legitimacy of the practice by Body Politix, a business operated by Ms. Hockridge, of charging fees to PPP loan applicants for assistance provided in connection with their loan application. Abshier Rpt. (Doc. #13-2) ¶ 68. This testimony is plainly probative and relevant to the case, as the Indictment (falsely) alleges that ***improper*** fee collections were material acts done in furtherance of the alleged conspiracy—describing them as "kickbacks." Indictment (Doc. #3) ¶¶ 18(c), (e).

The Government objects to Mr. Abshier's testimony that fees collected by Body Politix "were not prohibited under SBA guidance or regulations." Obj. (Doc. #135) at 9. As an initial matter, the gravamen of the Government's objection is that Mr. Abshier's testimony about fees under the PPP is "incorrect" and "inaccurate." *Id.* But the Government makes no attempt to explain why such testimony is ***unreliable***. Thus, the Court may stop here and overrule this objection, because the Government's arguments go to the weight, not the admissibility, of Mr. Abshier's testimony regarding fees. *Sanchez v. Corr. Healthcare Co.*, LLC, No. W-19-CV-00221-ADA-DTG, 2023 WL 2904582, at *2 (W.D. Tex. Apr. 11, 2023) (finding concerns that opinions were "inaccurate" went to the weight, not admissibility, of expert's opinions because objecting party failed to explain why each opinion was "demonstrably unreliable"); *Earl v. Boeing Co.*, No. 4:19-cv-507, 2021 WL 3140545, at *8 (E.D. Tex. July 26, 2021) (finding objections that an expert made

10

"factual errors or incorrect assumptions . . . go only to the weight, not the admissibility" of the expert's testimony).

But, despite the Government's unsupported objection, Mr. Abshier's testimony on this point is reliable. The Government's objection relies on mischaracterization of both Mr. Abshier's report and the applicable regulation.

First, some context. Mr. Abshier's expert report explains that Body Politix was a third-party vendor that assisted PPP loan applicants in submitting applications to lenders, and that Body Politix charged fees to applicants in what it called the "VIPPP" program. Abshier Rpt. (Doc. #13-2), ¶ 68. He further explains that, while Body Politix was not an "agent" under SBA rules, it would have been reasonable to believe such fees were acceptable *even if* Body Politix were subject to the SBA's agent regulations. *Id.* ¶ 70. That is because, "[w]hile the regulations prohibited the payment of agent fees directly from loan proceeds, the PPP rules did not impose limits on the amount an agent can be paid," and because "the provision preventing agents from being paid directly from loan proceeds . . . did not prevent the agent from charging the borrower a fee or receiving payment of that fee from the borrower." *Id*. Thus, "it would have been unreasonable to assume" that third-party vendors, like Body Politix, "should be restricted in the fees they charge." *Id.*

The Government objects that Mr. Abshier's testimony is incorrect and confusing because the Government "does not allege that agents were prohibited from collecting fees," but only that "the Defendants were prohibited from collecting kickbacks using PPP loan proceeds to collect fees." Obj. (Doc. #135) at 9. This objection, however, does not engage with Mr. Abshier's report—instead, it quotes a section subheading without addressing Mr. Abshier's reasoning discussed above.

In context, that section subheading introduced testimony that distinguished between, on the one hand, agents who "receiv[ed] loan proceeds from lenders on behalf of borrowers" and impermissibly "deduct[ed] fees before conveying the full principal of the loan to the borrowers" and, on the other hand, agents (or vendors like Body Politix) "charging the borrower a fee," which was permitted by the regulation. In other words, Mr. Abshier's report explains that agents and vendors were not prohibited from receiving a portion of loan proceeds from the borrower as a fee for their services. What the Government calls "kickbacks" is nothing more than an everyday fee-based compensation structure that does not run afoul of the law. *See generally United States v. Thrush*, 738 F. Supp. 3d 902, 905 (E.D. Mich. 2024), *reconsideration denied*, No. 1:20-CR-20365, 2024 WL 3868193 (E.D. Mich. Aug. 19, 2024) (holding that no PPP regulation or law prohibited borrowers from comingling PPP loan proceeds with other funds).

Mr. Abshier's testimony is accurate, proper, and helpful to the jury because it accurately contextualizes Body Politix's fee structure within the applicable regulations. On January 14, 2021, the SBA announced an interim rule (applicable retroactively) that provided guidance to lenders, borrowers, and agents. *See* Dep't of Treasury, *Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act*, 86 Fed. Reg. 3692 (Jan. 14, 2024). That interim regulation answered the question, "Who pays the fee to an agent who provides assistance in connection with a PPP loan?" *Id.* at 3709. The regulation answered, in relevant part:

> Agent fees may not be paid out of the proceeds of a PPP loan. If a borrower has knowingly retained an agent, ***such fees will be paid by the borrower***. A lender is only responsible for paying fees to an agent for services for which the lender directly contracts with the agent.

*Id.* (emphasis added). The Government apparently reads this sentence to prohibit an agent (or third-party vendor, like Body Politix) from being paid a fee after the borrower has received a PPP loan. Otherwise, the Government, contends, this would amount to a "kickback." Obj. (Doc. #135) at 9.

12

But that is not what the regulation says. What the regulation says is exactly what Mr. Abshier described: agents cannot receive loan proceeds *from lenders*, withhold a fee, and then pass the proceeds, less the fee, on to a borrower. Abshier Rpt. (Doc. #133-2) ¶ 70. Instead, such fees must be "paid by the borrower"; that is why the question asked in the regulation is, "*Who* pays the fee to an agent who provides assistance in connection with a PPP loan?" 86 Fed. Reg. at 3709 (emphasis added).

Under the Government's strained interpretation, the question asked in the regulation should really be phrased: "Must an agent be able to trace a fee for services in processing a PPP loan application back to funds that the borrower would have had even if the PPP loan had not been disbursed?" To avoid what the government calls a "kickback," an agent would somehow have to know that the money a borrower tenders in payment for assistance in applying for a PPP loan came from an independently traceable source of funds. On the Government's reading, if a PPP loan is what *enables* the borrower to pay a fee for the agent's services, then the agent could not accept a fee at all—despite the regulation expressly providing that agent fees "will be paid by the borrower." 86 Fed. Reg. at 3709. Indeed, the PPP regulatory scheme specifically contemplated that the borrower could use the loan proceeds for expenses other than payroll costs. Abshier Rpt. (Doc. #133-2) ¶ 23 & n.22 (explaining that, initially, 75% of proceeds had to be used for payroll, later reduced to 60%). But the Government's misinterpretation of the regulations would prevent the most cash-strapped businesses from even using an agent to apply for a PPP loan in the first place—a reading that would defeat the entire purpose of the PPP loan. It would also make the same act by the agent—accepting a fee—either legal or illegal based on how much cash on hand the borrower had before the loan was disbursed. Nothing in the regulation even hints at placing such an impossible burden on agents to ascertain the source of a borrower's payment of a fee.

13

But it gets worse. The Government has not even alleged that Body Politix or Ms. Hockridge received application fees from borrowers who lacked independent funds sufficient to cover the fees. Yet it still alleges that such payments were illegal "kickbacks." So, the Government's theory really boils down to the claim that an agent acts unlawfully in accepting *any payment* that occurs subsequent to the disbursement of a PPP loan, as a borrower who receives loan proceeds and then pays an application fee *may have* paid the agent "out of the proceeds of a PPP loan." *Cf.* 86 Fed. Reg. at 3709. The Government may claim that it is only targeting "kickbacks," not payments. Obj. (Doc. #135) at 9. But because the Government has not supplied any coherent limiting principle on what counts as a "kickback," the Government cannot articulate *why* its reading of the regulation would avoid an absurd conclusion.

In short, Mr. Abshier interpreted the relevant regulations *correctly*, and his testimony that proceed upon these interpretations will be material, probative, and helpful to the jury. Yet, if as the Government suggests, there is a dispute as to whose interpretation is accurate, that only makes Mr. Abshier's testimony all the more relevant in order to provide an evidentiary basis to support Ms. Hockridge's reasonable understanding of the limits (or lack thereof) on charging fees to borrowers. *See* Proposed Instructions (Doc. # 143) at 52–53 (Proposed Instruction No. 32, Kickbacks).

### III. Mr. Appelbaum's Testimony Is Likewise Relevant and Material to Ms. Hockridge's Defense

The gravamen of the Government's objection is that Mr. Applebaum's one-page report is not proper expert testimony because it is not relevant to the determination of Ms. Hockridge's guilt or innocence. The Court should, again, reject the Government's attempt to present a one-sided view of the case by limiting Ms. Hockridge's ability to put her alleged conduct in its proper context.

The Government claims that Ms. Hockridge engaged in wide-ranging scheme to facilitate the submission of hundreds of fraudulent loan applications through VIPPP. Yet, the Government says it intends to limit its proof at trial to the small handful of loans. Mr. Appelbaum's report reflects his proffered testimony, based on his decades of experience as an FBI agent and investigator, that will assist the jury in understanding that these loans represented a microscopic fraction of the nearly 2,000 loans processed through VIPPP, the vast majority of which did not bear obvious indicia of fraud. The fact the Government can only point to a few allegedly suspect loan applications out of thousands of legitimate ones also undermines the Government's assertions regarding Ms. Hockridge's reasons for engaging in the alleged conduct. Thus, placed in their proper context, the small set of cherry-picked loans that the Government says were fraudulent do not support a finding that Ms. Hockridge had an intent to defraud. That that so many of the loans processed through the VIPPP program were in fact legitimate (or at least, appeared legitimate on their face) makes it far more likely that any failure to detect fraud was the product of negligence, mistake, or inattention, rather than a knowing and intentional scheme to defraud. Thus, Mr. Appelbaum's testimony is plainly relevant to the issues of intent and motive.

## CONCLUSION

Ms. Hockridge's experts will assist the jury in evaluating Ms. Hockridge's alleged conduct in its proper context rather than in vacuum, as the Government seeks to do. If the Government has the right to put on its case in the way it chooses, then Defendant must be given that same right. It cannot artificially limit Ms. Hockridge's right to present any and all available evidence of her good faith to defeat the Government's allegations that she acted with fraudulent intent. The Court should reject the Government's improper attempt to put on an unfair, incorrect, and one-sided presentation and overrule its objection in its entirety.

| | |
|---|---|
| Dated: May 2, 2025 | Respectfully submitted, |

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*

*Attorneys for Defendant Stephanie Hockridge*

GALLIAN FIRM

*/s/ Gregg Gallian*
Gregg Gallian, TX Bar: 24085952
3500 Maple Avenue, Suite 1150
Dallas, Texas 75219
Tel: (214) 432-8860
Fax: (972) 433-5835
*gregg@gallianfirm.com*

*Attorneys for Defendant Stephanie Hockridge*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of May, 2025, a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's CM/ECF system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN