**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | Case No. 4:24 CR-00287-O |
| STEPHANIE HOCKRIDGE, a/k/a<br>STEPHANIE REIS,<br><br>Defendant. | §<br>§<br>§<br>§ | (02) |

**DEFENDANT STEPHANIE HOCKRIDGE'S**
**SUPPLEMENTAL BRIEF IN OPPOSITION TO THE**
**GOVERNMENT'S MOTION IN LIMINE REGARDING "GOOD ACTS" EVIDENCE**

**TABLE OF CONTENTS**


Table of Authorities .................... ii

Summary and Introduction .................... 3

Discussion .................... 5

I. Fifth Circuit Law Does Not Prevent a Defendant Charged with Conspiracy from Offering Evidence, for a Non-Character Purpose, of "Other" Acts Performed During the Alleged Conspiracy .................... 5

II. Ms. Hockridge's Evidence Is Not Offered to Prove Her Character; It Is Offered to Directly Refute Elements of the Charged Offenses .................... 8

III. Ms. Hockridge Must Be Permitted to Rebut the Government's Allegations of a Conspiracy and Scheme to Defraud .................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Akers*,
7:19-cr-7-REW-BEA, 2019 WL 4934948 (E.D. Ky. Oct. 7, 2019) ................................ 8, 9, 12

*United States v. Ali*,
870 F. Supp. 2d 10 (D.D.C. 2012) ................................ 9, 12

*United States v. Grimm*,
568 F.2d 1136 (5th Cir. 1978) ................................ 7, 8

*United States v. Hayes*,
219 F. App'x (3d Cir. 2007) ................................ 8, 12

*United States v. Jackson*,
544 F. App'x 380 (5th Cir. 2013) ................................ 11

*United States v. Marrero*,
904 F.2d 251, 253–54 (5th Cir. 1990) ................................ 7, 8

*United States v. Nguyen*,
504 F.3d 561 (5th Cir. 2007) ................................ 12

*United States v. Rubin/Chambers*,
828 F. Supp. 2d 698 (S.D.N.Y. 2011) ................................ 9, 13

*United States v. Santos*,
201 F.3d 953 (7th Cir. 2000) ................................ 12

*United States v. Spayd*,
2022 WL 4367621 (D. Ala. Sept. 20, 2022) ................................ 9, 12

**Rules**

Fed. R. Evid. 401 ................................ 6, 12
Rule 404(b) ................................ 6. 7, 8, 11
Rule 406 ................................ 6, 7, 8, 11

## SUMMARY AND INTRODUCTION

Ms. Hockridge, through her undersigned counsel, files this supplemental brief in further opposition to the Government's motion in limine regarding so-called "good acts" evidence. *See* Mot. (Doc. #76). Ms. Hockridge thanks the Court for the opportunity to submit supplemental briefing on such a critical issue to her defense.

Ms. Hockridge plans to introduce evidence of her specific acts under Rules 402, 404(b), and 406 not to prove her "good" or "law-abiding" character, but to show that she acted in good faith during the very course of conduct the Government contends was a criminal conspiracy. Ms. Hockridge plans to introduce that evidence to refute charges explicitly present on the face of the Superseding Indictment. The Government alleges that VIPPP, a referral network led by Ms. Hockridge, was itself a manner and means of a conspiracy to solicit and facilitate fraudulent PPP loan applications. Superseding Indictment (Doc. #163) ¶ 16(e). To rebut that charge, Ms. Hockridge intends to introduce evidence that she encouraged the staff at VIPPP to be vigilant in attempting to detect and prevent fraud, including paying bonuses for flagging suspicious loan applications. That evidence is admissible—not because it shows Ms. Hockridge is a person of "law-abiding" or "good" ***character***—but because it ***directly*** rebuts the charge in the Superseding Indictment that she intentionally devised a plan to use VIPPP to further a fraudulent conspiracy. Indeed, as Ms. Hockridge will show, her implementation of multiple fraud-detection measures flatly contradicts that claim.

Similarly, the Government has alleged that Ms. Hockridge conspired with Eric Karnezis to submit fraudulent loan applications through VIPPP, based almost entirely on a purported conversation where Ms. Hockridge allegedly instructed Mr. Karnezis on how to commit fraud. To rebut the claim that there was any such agreement with Mr. Karnezis, Ms. Hockridge intends to

offer evidence of how she handled applications submitted through Mr. Karnezis's VIPPP referral channel—including rejecting numerous loans submitted by Mr. Karnezis that Ms. Hockridge suspected to be fraudulent.

Again, that evidence is admissible, not to show her good character, but because it ***directly*** rebuts the Government's claims that she entered a conspiracy or scheme with Mr. Karnezis, that she knew Mr. Karnezis was intentionally submitting fraudulent applications, or that she had any plan or intent to push through such fraudulent applications. The evidence makes a fact of enormous consequence—i.e. whether there was an unlawful agreement—far less likely, thereby making it plainly relevant evidence. Put simply, evidence that Ms. Hockridge rejected suspicious loans that were submitted through Mr. Karnezis's channel is probative of whether Ms. Hockridge conspired with Mr. Karnezis to submit fraudulent loan applications. A reasonable jury could conclude that if there was a conspiracy, Ms. Hockridge would have pushed through loans she suspected were fraudulent, not rejected them. Importantly, no appeal to Ms. Hockridge's "character" is necessary to draw such an inference.

The Government has charged Ms. Hockridge with conspiracy to commit wire fraud from approximately April 2020 through May 2021. The Government alleges that Ms. Hockridge worked with several individuals to commit fraud. To support their argument, Ms. Hockridge anticipates that the Government's case-in-chief will consist of a number of hand-picked loans and testimony by alleged coconspirators. Faced with such allegations, Ms. Hockridge is entitled to produce evidence that directly refutes their claims. To challenge the testimony of the alleged coconspirators, she is entitled to introduce evidence that is directly probative of her intent. Having charged Ms. Hockridge with conspiracy to commit wire fraud that allegedly lasted more than a year, the

Government cannot fairly seek to exclude evidence that shows that no conspiracy existed during that same time period.

Denying Ms. Hockridge the right to introduce such evidence would be a gravely prejudicial error. The Government intends to introduce evidence of numerous loan applications not identified in the Superseding Indictment to establish the existence of a scheme and a conspiracy. Ms. Hockridge must be able to refute that claim by showing that the manner in which VIPPP operated was not consistent with any such scheme or conspiracy and, in fact, establishes that her intent was entirely to the contrary.[1] The jury must decide what weight to give the competing evidence. Otherwise, the jury will be told just one side of the story, without the context needed to assess whether the Government's allegations of fraudulent intent are true or false.

## DISCUSSION

### I. Fifth Circuit Law Does Not Prevent a Defendant Charged with Conspiracy from Offering Evidence, for a Non-Character Purpose, of "Other" Acts Performed During the Alleged Conspiracy

Rules 404 and 405 prohibit a defendant from offering evidence of "other . . . act[s]" to prove or disprove her good character. But Ms. Hockridge does not seek to offer evidence regarding her management, supervision, and performance in the VIPPP program as evidence of her good character. She instead seeks to introduce it as evidence directly relevant to her lack of intent to

[1] At this Court's recent hearing, the Government seized upon Ms. Hockridge's counsel's use of the word "inconsistent" to describe the relevance of the "good acts" evidence the Government seeks to exclude. But Rules 404 and 405 prohibit evidence being used to show that the Defendant's ***character*** is inconsistent with her being a criminal actor, not from its being used as ***direct*** evidence to show that her ***conduct*** in the particular circumstances of the case are inconsistent with the Government's allegations of knowledge, intent, plan, conspiracy, and scheme. Indeed, that is the nature of all evidence presented by any defendant: to demonstrate that the evidence introduced in support of her defense is "inconsistent" with—and thereby creates a reasonable doubt regarding—the Government's allegations.

commit fraud, which is expressly permitted under Federal Rules of Evidence 402, 404(b)(2), and 406.

Rule 404(b)(2) permits the introduction of "other . . . act[s]" evidence not as character evidence, but for any ***other*** admissible purpose, such as proving (or, in Ms. Hockridge's case, disproving) plan, knowledge, and intent—each of which are elements of the charged offenses. *See* Proposed Instr. (Doc. #143) No. 37 (stating that a conspiracy charge requires proof that the defendant "***knew***" the unlawful purpose of the agreement and joined it "***willfully***" (emphasis added)); *id.* No. 40 (stating that the Government must prove that Ms. Hockridge "***knowingly*** devised or ***intended*** to devise a ***scheme***" (i.e., a plan) to defraud (emphasis added)). Likewise, Rule 406 permits the introduction of such evidence to establish Ms. Hockridge's habit and routine practice of instructing her staff and affiliates on how to review applications and what to do when they suspected fraud. *See* Fed. R. Evid. 406.

Such evidence is relevant and admissible because it makes multiple "fact[s] of consequence" more or less likely. Fed. R. Evid. 401(b). The evidence is probative of (1) whether Ms. Hockridge in fact had an agreement with any of her alleged coconspirators to commit fraud (she did not); (2) whether she devised a scheme to commit fraud through her supervision and operation of the VIPPP program (she did not); and (3) whether she joined any such agreement or scheme with knowledge of its illegal purpose (she did not).

At its June 4, 2025 hearing, the Court questioned both parties on whether the Government's cited authorities would preclude certain kinds of evidence that Ms. Hockridge might offer at trial regarding the manner in which she operated the very program that the Government claims was at the center of the conspiracy and scheme alleged in the Superseding Indictment. None of the Government's cited authorities prevent Ms. Hockridge from introducing such exculpatory,

"other . . . act[s]" evidence not as character evidence, but for permissible reasons, including those outlined in Rule 404(b) and 406.

In *United States v. Marrero*, for example, the defendant was charged ***not*** with conspiracy, but with presenting false claims to a government agency. 904 F.2d 251, 253–54 (5th Cir. 1990) (noting that Marrero was charged with "seventeen counts of presenting false claims to an agency of the United States and on twenty counts of theft of government property"). The defendant sought to introduce evidence under Rule 405 that she sometimes underbilled clients—not to disprove intent to join a conspiracy under Rule 404(b), since none was charged—but rather, under Rule 405, to "prove that her ***good character was inconsistent*** with criminal intent." *Id.* at 21 (emphasis added). In other words, she sought to introduce such evidence as ***character evidence***. The court held that such evidence is not admissible to prove character under "Rule ***405(b)***" (emphasis added); it did not address whether "other . . . act[s]" evidence is admissible under Rule ***404(b)*** to disprove criminal intent, a scheme or plan, the defendant's knowledge, or conspiratorial agreement. *Id.* at 260.

In *United States v. Grimm* (a 47-year-old, two-page opinion), a case about fraudulent bank drafts, the defendant sought to introduce evidence of non-fraudulent drafts. 568 F.2d 1136, 1138 (5th Cir. 1978). The Fifth Circuit held that the trial court had discretion to exclude that evidence because it was "***cumulative*** of . . . undisputed testimony that [a defendant] had paid other drafts"—meaning that the trial court ***had already admitted*** "other . . . act[s]" evidence that tended to rebut the Government's charges. *Id.* at 1138 (emphasis added). The court also held that evidence of noncriminal conduct is "generally" irrelevant to negate an inference of criminal conduct. *Id.* But that means only that a good act does not erase a bad act, which Ms. Hockridge does not dispute.

This case is fundamentally different from *Marrero* and *Grimm*. Unlike in *Marrero*, Ms. Hockridge does not seek to introduce character evidence under Rule 405 to prove her good character. *Marrero*, 904 F.2d at 259. She instead seeks to introduce "other . . . act[s]" evidence under Rules 402, 404(b), and 406—i.e, evidence of her direct efforts to detect and prevent fraud, and evidence of rejections of fraudulent loan applications—for the permissible purpose of showing that she did not intend to join a criminal conspiracy and did not plan a scheme to defraud.

Further distinguishing *Grimm*, this is not a case where Ms. Hockridge seeks to introduce evidence that is overly cumulative of other admitted evidence; indeed, the Government seeks to exclude such evidence altogether. *Cf. Grimm*, 568 F.2d at 1138 (excluding evidence because it was "simply cumulative" and risked "confus[ing] the jury"). Nor is this a case where Ms. Hockridge is simply arguing that one good act (like a good loan) negates another bad act (like a bad loan)—or even in which she is pointing to evidence "of prior non-criminal acts [] to demonstrate that [she] did not act criminally on an unrelated occasion." *United States v. Akers*, No. 7:19-cr-7-REW-BEA, 2019 WL 4934948, at *9 (E.D. Ky. Oct. 7, 2019). Instead, Ms. Hockridge seeks to introduce evidence that directly refutes allegations that she knowingly and intentionally joined a criminal scheme or conspiracy. *See id.* (holding that, though non-criminal acts are not admissible to show a general "propensity for legality," non-criminal acts are admissible to show an "overall course of" conduct relevant to rebut allegations of a conspiracy).

## II. Ms. Hockridge's Evidence Is Not Offered to Prove Her Character; It Is Offered to Directly Refute Elements of the Charged Offenses

As explained above, evidence of specific "other . . . act[s]" is admissible under Rule 404(b) to disprove an intent to join a criminal conspiracy. *See, e.g.*, *United States v. Hayes*, 219 F. App'x 219, 117 (3d Cir. 2007) (evidence was admissible when it was "not offered to prove [the defendant's] character" but instead "to show that [the defendant's] actions were ***inconsistent with***

***conspiring to fabricate test results***" (emphasis added)); *Akers*, 2019 WL 4934948, at *9 ("[T]o the extent the Government's theory of the conspiracy rests on a common pattern of illicit prescribing . . . Akers may present evidence regarding his care of the relevant patient class in order to present a full picture of the care he provided to this class of patients."); *United States v. Ali*, 870 F. Supp. 2d 10, 22 (D.D.C. 2012) ("The Court further concludes that although this evidence pertains to Ali's 'other act[s],' it is nonetheless 'admissible' for the 'purpose' of negating the government's showing of Ali's 'intent.'"); *United States v. Rubin/Chambers*, 828 F. Supp. 2d 698, 708 (S.D.N.Y. 2011) ("If an Uncharged Transaction shared the same objective characteristics as an Overt Act Transaction, but the bidding outcome differed, the Uncharged Transaction could be relevant to undermine the Government's position that Defendants possessed the intent to manipulate the bidding process."); *cf. United States v. Spayd*, No. 3:19-cr-0111-JMK, 2022 WL 4367621, at *2 (D. Ala. Sept. 20, 2022) ("Specific acts of Ms. Spayd's good conduct therefore is relevant to rebut the proposition that Ms. Spayd maintained her practice for the purpose of illegally distributing drugs."). Here, Ms. Hockridge plans to introduce contemporaneous communications and other evidence that directly refute the Government's allegations that she intended to join a conspiracy and planned a scheme to solicit and facilitate fraudulent PPP loan applications. Two examples demonstrate the point.

The first example involves Eric and Anthony Karnezis, alleged coconspirators who have pleaded guilty to submitting fraudulent PPP loan applications, and whom the Government intends to call at trial. The Karnezises submitted almost 200 fraudulent loan applications from one of their referral agents, who (unbeknownst to Ms. Hockridge) was using the false name "Rick Diamond." A contemporaneous communication shows that, as Ms. Hockridge had instructed him to do, one of her VIPPP team members flagged those applications as potentially fraudulent:

> Rob: "Hey Stephanie, Talked with Andrew yesterday and he said I should bring this up to you. Nearly every single one of the remaining unassigned loans are from [Eric and Anthony Karnezis] – and they are all California sole props with between 9 and 13 employees, every single one of them with a payroll between $625k and $695k (often either $644 or $674), and some of them with multiple names on payroll that have applied for a lot of their own, also almost identical loans. . . ."

**Ex. A** (message from R. Warzel to S. Hockridge). Rather than wave the suspicious applications through, Ms. Hockridge then investigated the situation and, as a result, caused the applications to be withdrawn. *See* **Ex. B** ("Team: The 'Rick Diamond Situation' has been resolved in Salesforce. The flagged applications have been marked as 'Withdrawn.'"). The evidence also demonstrates that Mr. Karnezis lied to the VIPPP team about his knowledge of the falsehoods in those applications, falsely asserting that he did not want to have anything to do with Rick Diamond:

> Eric: "Withdraw anything related to Rick diamond. I don't want anything to do with fraudsters. / If they are legit that's too bad… they should have chosen better friends"
> Rob: "Haha Fair enough. Gilda and Kenneth Ramcharan being withdrawn."
> Eric: "I hate losing money but I feel like it's prudent of us to stay away from that energy"

**Ex. C** (messages between E. Karnezis and R. Warzel) at 2. This evidence, which directly bears on the existence of the conspiracy alleged in the Superseding Indictment, is not character evidence about Ms. Hockridge. It is direct evidence contradicting the Government's allegations of a conspiracy between Ms. Hockridge and the Karnezises to facilitate fraudulent PPP loans.[2]

In another instance, suspicions were raised regarding a number of loan applications submitted through Blueacorn by an individual named Z.S. To separate the fraudulent applications from the genuine ones, Blueacorn called in ***Ms. Hockridge*** to review the 350 potentially fraudulent applications that had been placed on hold. For those submitted by Z.S., Blueacorn and Ms. Hockridge developed a plan to "require [the applicants] to provide additional documents & [] handle each on a case-by-case" basis. *See* **Ex. D** (email from A. Frank regarding process for

---

[2] This particular instance is also admissible for the separate purpose of impeaching Mr. Karnezis's testimony regarding the existence of a conspiracy between him and Ms. Hockridge.

addressing suspicious loan applications) at 2. Again, this is not mere character evidence. This is evidence rebutting the charge in the Superseding Indictment that Blueacorn was an instrument of a fraudulent conspiracy. Superseding Indictment (Doc. #163) ¶¶ 16(b), (d).

There are many such examples of Ms. Hockridge identifying suspicious applications and providing correct advice (or at least, advice she believed in good faith to be correct) to borrowers as to what they could and could not do in order to qualify for a loan under the PPP. Taken together, those examples dwarf the Government's evidence of any knowing scheme or conspiracy participated in by Ms. Hockridge, nearly all of which is circumstantial and based on insinuation. Ms. Hockridge must have the ability to refute those claims—not by proving that she is a person of "good" or "law-abiding" character—but by showing the jury that she engaged in conduct that contradicts the Government's allegation that she knowingly and intentionally entered into the conspiracy and scheme alleged in the Superseding Indictment.

## III. Ms. Hockridge Must Be Permitted to Rebut the Government's Allegations of a Conspiracy and Scheme to Defraud

Ms. Hockridge anticipates that the Government will introduce evidence of a group of fraudulent loan applications that were submitted through VIPPP or Blueacorn—including loans not alleged in the Superseding Indictment—in order to prove the existence of a fraudulent scheme and conspiracy. As courts uniformly recognize, such evidence is admissible, not because it is evidence of Ms. Hockridge's character, but because it is ***direct evidence*** of the existence of a scheme or conspiracy, and is thereby admissible. *See, e.g.*, *United States v. Jackson*, 544 F. App'x 380, 383 (5th Cir. 2013) ("Jackson also argues that the district court erred in permitting the introduction of evidence of other similar crimes that occurred prior to the dates alleged in the indictment, in violation of Federal Rule of Evidence 404(b). Because the evidence established that the conspiracy continued through the time stated in the indictment, the district court did not err in

admitting it."); *United States v. Nguyen,* 504 F.3d 561, 574 (5th Cir. 2007) (holding that evidence relating to two fraudulent property transactions that were not charged in the indictment was relevant to defendant's knowledge and intent in engaging in the similar property transactions charged in the indictment).

What's good for the goose is good for the gander. If the Government is permitted to introduce evidence of Ms. Hockridge's purported "other acts" to prove that a conspiracy and scheme existed, then she is entitled to introduce evidence of her "other acts" during the same period and under the same program to dispute the Government's allegations. *Spayd*, 2022 WL 4367621, at *2 ("The Government may not seek to introduce prior bad acts evidence with the argument that it tends to prove the continuous nature of Count 10, while simultaneously seeking to preclude Ms. Spayd from offering prior good act evidence to undermine this theory of guilt."); *Akers*, 2019 WL 4934948, at *9 ("[T]o the extent the Government's theory of the conspiracy rests on a common pattern of illicit prescribing . . . Akers may present evidence regarding his care of the relevant patient class in order to present a full picture of the care he provided to this class of patients."); *see generally United States v. Santos*, 201 F.3d 953, 962 (7th Cir. 2000) (Posner, J.) ("[I]t is improper to prevent a party from countering possibly false testimony favorable to his opponent even if that testimony should not have been admitted."). And like the Government, she is not using such evidence to prove her character, but because it is ***direct evidence*** that tends to make the existence of a scheme or conspiracy less likely. *See* Fed R. Evid. 401(b). *See Hayes*, 219 F. App'x at 117 ("The government introduced specific instances of Hayes pressuring employees to ignore company policy and fabricate test results. The evidence Hayes wanted to introduce is no less relevant merely because it is exculpatory and undermines Hayes's participation in the alleged conspiracy."); *Ali*, 870 F. Supp. 2d at 22 ("The Court further concludes that although this evidence pertains to Ali's

'other act[s],' it is nonetheless 'admissible' for the 'purpose' of negating the government's showing of Ali's 'intent.'"); *Rubin/Chambers*, 828 F. Supp. 2d at 708. Simply put, if bad loans tend to prove the existence of a conspiracy, then specific actions taken to prevent bad loans tend to disprove it. That makes them admissible, relevant evidence under Rules 402, 404(b), and 406.

## CONCLUSION

Acceding to the Government's request would work a grave injustice. The Government has charged Ms. Hockridge with a wide-ranging conspiracy to solicit and facilitate fraudulent PPP loan applications. Although it has unfairly attempted to confine its proof at trial to only a handful of loans in order to limit Ms. Hockridge's ability to put on evidence of her good faith, the charges in the Superseding Indictment are not nearly so narrow. By excluding powerful evidence of her good faith from the jury's consideration, the Government evidently hopes to convince the jury of Ms. Hockridge's guilt by depriving them of the needed context to understand both the framework of the PPP and the significant efforts she made to root out fraud when suspicions were raised. That is not evidence of her good character; it is direct evidence of her lack of fraudulent intent, lack of knowledge, and lack of plan to commit fraud, all of which tend to make the existence of any conspiracy or scheme substantially less likely. Such evidence is therefore plainly relevant and must be admitted for those non-character purposes. Any other ruling would unfairly handicap Ms. Hockridge's ability to defend herself against the Government's serious charges.

Dated: June 9, 2025

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*

*Attorneys for Defendant Stephanie Hockridge*

GALLIAN FIRM

*/s/ Gregg Gallian*
Gregg Gallian, TX Bar: 24085952
3500 Maple Avenue, Suite 1150
Dallas, Texas 75219
Tel: (214) 432-8860
Fax: (972) 433-5835
*gregg@gallianfirm.com*

*Attorneys for Defendant Stephanie Hockridge*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's CM/ECF system.

*/s/ Richard Finneran*
RICHARD E. FINNERAN