UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:24-CR-287-O |
| NATHAN REIS (01)<br>STEPHANIE HOCKRIDGE (02)<br>a/k/a STEPHANIE REIS | |

## **GOVERNMENT'S OBJECTION TO DEFENSE EXPERTS**

The United States, by and through the undersigned counsel, hereby objects to

expert testimony proffered by Defendant Nathan Reis on July 21, 2025. *See* Dkt. 256.

The proffered testimony is irrelevant to the PPP fraud charged in the indictment and will

be unhelpful and confusing to the jury. Accordingly, it should be excluded.

## **LEGAL STANDARD**

The proponent of expert testimony bears the burden of establishing its

admissibility. *Moore v. Ashland Chem., Inc*., 151 F.3d 269, 276 (5th Cir. 1998). The

Court has "wide latitude in determining the admissibility of expert testimony." *Watkins v.*

*Telsmith, Inc*., 121 F.3d 984, 988 (5th Cir. 1997). Federal Rule of Evidence 702 provides

that an expert witness may testify if the expert's specialized knowledge "will help the

trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

"Expert testimony is admissible only 'if it is both relevant and reliable.'" *Sec. & Exch.*

*Comm'n v. Life Partners Holdings, Inc*., 854 F.3d 765, 775 (5th Cir. 2017) (internal

citations omitted). Even if the expert testimony is relevant, a court may exclude it under

Rule 403 "if its probative value is substantially outweighed by a danger of one or more of

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

### I.    The Court Should Exclude Proffered Expert Testimony by Former FBI Special Agent Eric Mills.

Reis fails to meet his burden to establish that Eric Mills' proffered expert

testimony is admissible because it is irrelevant to issues that will arise at trial. Mills is a

former Special Agent for the FBI and "is currently a Senior White Collar Crime

Investigator." Dkt. 256 at 1. According to Reis, Mill's testimony "will principally entail

providing his analysis of materials produced by the Government in the course of its

investigation, as well as offering testimony, based on his experience and investigation, as

to the public availability (or lack thereof) of certain information relating to borrower

eligibility for the Paycheck Protection Program (PPP)." Dkt. 256 at 1-2. The attached

one-page report by Mills indicates that Mills' expected testimony centers on two issues

that the government will not discuss in its case-in-chief at trial. Dkt. 256-1. As such, the

Court should exclude Mills' irrelevant testimony, which risks confusing the jury about

the issues.

According to Mills' report, his expected testimony centers on the assertions that

(1) "a borrower's complete and accurate criminal history or military history (including

active-duty status) are not, as a general rule, freely and readily retrievable by members of

the public without access" to certain databases and resources and (2) based on public

information on the IRS website, "the first two digits of an Employer Identification

Number (EIN) indicate the IRS campus that assigned it or whether the applicant applied online." Dkt. 256-1 at 2.

The Court should exclude Mills' proffered expert testimony because it is not relevant to a determination of Reis' guilt or innocence but rather is pertinent to calculating the amount of the loss caused by the Defendants' fraud.[1] The government discussed certain fraud indicators, including military history and EIN, only in the context of the Defendants' loss amounts and sentencing, and the government has repeatedly told the Defendants that it does not intend to rely on these indicators to prove the Defendants' guilt at trial. Consistent with these representations, the indictment does not mention these fraud indicators, and, as Reis could see through the trial of co-Defendant Stephanie Hockridge, the government's case-in-chief indeed did not raise these indicia of fraud, which are pertinent only to sentencing.

Rather, the indictment and the government's case against Hockridge focused on fraudulent loans that the Defendants were directly involved in submitting or causing to submit to the lenders and the SBA. The government has endeavored to help Defendant prepare for trial by providing and continuously updating a list of loans that will be the focus of its case-in-chief. These loans are not based on the fraud indicators discussed by the government in the context of sentencing. Thus, Mills' proffered testimony, which focuses on issues relevant only to sentencing, is irrelevant and will confuse the jury.

---

[1] The government recounted the plea discussions surrounding the loss amount calculation and indicia of fraud in detail in its Objections to Defense Experts filed in response to co-defendant Stephanie Hockridge's proffered expert testimony. Dkt. 135 at 3-4.

## II.     The Court Should Exclude Proffered Expert Testimony by David Abshier.

The government objects to David Abshier's proposed expert testimony because it is irrelevant and needlessly cumulative; it will confuse the jury; and it could include improper opinion testimony. Abshier previously worked at and with financial institutions in various roles, including as bank risk manager, chief credit officer, compliance officer, regulator, advisor, and consultant. Dkt. 256 at 2. According to Reis, Abshier's testimony "will principally involve providing an overview of the statutes and regulations applicable to lenders, borrowers, and others as part of the PPP and describing the roles of the various entities in the process of applying for, processing, and issuing PPP loans." Dkt. 256 at 2. Reis attaches a report that focuses mostly on regulations related to PPP loans. Dkt. 256-2.

### A.  Abshier's Proffered Testimony is Irrelevant, Needlessly Cumulative, and Confusing.

As an initial matter, Abshier offers testimony on certain factual matters that are simply not in dispute. He opines that lenders were responsible for originating PPP loans under relaxed Small Business Administration requirements and describes how lenders were held harmless for relying in good faith on the representations of borrowers. The government intends to elicit testimony of an SBA employee with significant experience and knowledge of the Paycheck Protection Program. Her testimony is expected to cover these same topics, including, *inter alia*, how the SBA delegated authority to lenders, and the SBA's requirements regarding borrower certifications as well as the collection and review of application information and documentation. Following that testimony, the

Court can evaluate whether Abshier's proffered testimony on the same points should be allowed or rejected as needlessly cumulative and a waste of time.

Additionally, Abshier's proffered testimony concerns aspects of Defendant's business that are not at issue in the upcoming trial. As Abshier recognizes, Blueacorn had a public-facing business that assisted PPP applicants through its website, as well as a referral program, VIPPP, that recruited applicants through individuals such as Eric Karnezis. The indictment charges Reis with fraud related to his personal loans, loans to others he personally knew were fraudulent, and loans he facilitated despite his and his coconspirators' knowledge that they were fraudulent. Reis is not charged with negligently allowing fraudulent applications to slip through the cracks on the public-facing side of Blueacorn.

Thus, whether Blueacorn or Body Politix had any regulatory or contractual "fraud detection responsibilities," *see* Dkt. 256-2 at 30-31, is irrelevant. So too is the fact that lenders had anti-money laundering and fraud screening responsibilities. *Id*. at 27-28. Regardless of any regulatory or contractual obligations on Blueacorn or the obligations of Blueacorn's lending partners, Reis knowingly submitted fraudulent applications and conspired with others to solicit and cause to submit fraudulent applications. Abshier's testimony about regulations that applied to the public-facing part of Blueacorn will overwhelm the jury with irrelevant information, and it should be excluded.

Similarly, Abshier offers an irrelevant opinion that it was "not improper for Body Politix to assist PPP applicants with compiling tax documents." Dkt. 256-2 at 31. The government does not allege that Reis and his coconspirators were prohibited from

assisting applicants with tax documents. Instead, the government alleges that Reis and his coconspirators improperly *falsified* tax documents and other supporting documentation, and provided materially false information, in PPP loan applications. *See* Superseding Indictment ¶¶ 16-17. So, the question is not "whether it was reasonable for Body Politix to offer support to applicants," as Abshier posits, but whether Reis and his coconspirators were permitted to—and did—make material false representations in documentations and information in PPP loan applications.

Abshier's proffered opinion that "Body Politix was not responsible for identifying potential fraud in the loan applications it referred to Blueacorn 2.0," Dkt. 256-2 at 30, is likewise irrelevant. Defendant is alleged to have "recruited coconspirators to work as VIPPP referral agents and coach borrowers on how to submit false PPP loan applications." Superseding Indictment ¶ 16(e). The issue is not whether conspirators within the VIPPP pipeline had formal review responsibilities pursuant to the LSPA or otherwise. Rather, the issue is whether Reis and his coconspirators were affirmatively engaged in committing fraud. Abshier's proffered opinion in this area is therefore irrelevant.

### B. Abshier's Proffered Testimony Includes Improper Opinion Testimony about Laws and Regulations.

Even assuming Abshier's opinions concerning PPP regulations applied to the charged loans, they would be inadmissible because they would provide no insight into the elements of the charged criminal offenses, particularly whether Reis acted with intent to defraud. Abshier opines in the abstract that PPP regulations were complicated and

changed over time, but he cannot speak to whether Reis understood the changes in the rules or whether he was even aware of them.

Reis is not the first defendant to attempt to improperly use expert opinions about the supposed complexity of laws and regulations. For example, in *United States v. Herzog*, 632 F.2d 469 (5th Cir. 1980), a defendant in a criminal tax case sought to introduce expert testimony "that the tax laws are complex and that even law students, law professors, and attorneys find the subject very difficult." *Herzog*, 632 F.2d at 473. The district court excluded the expert's testimony, and the Fifth Circuit affirmed because the expert's opinions about the complexity of tax laws "could not shed any light on whether Herzog had been confused by any such complexity at the time he submitted the" relevant tax forms. *Id.* Other courts have similarly excluded expert testimony that broadly gestured at the complexity of a regulatory scheme. *See United States v. Reed*, No. 15-100, 2016 WL 1105010, at *5-7 (E.D. La. Mar. 22, 2016) (excluding expert's "custom and practice" testimony related to Louisiana's Campaign Finance Disclosure Act and stating, "If Walter Reed wishes to testify regarding his understanding of the prohibitions on his campaign expenditures under the CFDA, he may do so, but [the expert's] testimony will not provide insight on Walter Reed's subjective understanding of the law."), *aff'd*, 908 F.3d 102, 117 (5th Cir. 2018), *United States v. Whittemore*, 944 F. Supp. 2d 1003, 1010-12 (D. Nev. 2013) (excluding expert testimony from linguistics professor that campaign finance statute was ambiguous), *United States v. Hopkins*, No. CR 09-863 MCA, 2010 WL 1169176, at *6-8 (D.N.M. Sept. 22, 2010) (excluding expert testimony from tax protestor that "the tax code is complex and that most people do not understand the laws").

If Reis wishes to defend himself by arguing that the complexity of the PPP regulations somehow caused him to submit applications he knew were fraudulent, then he can do so through his own testimony. He cannot, however, testify through Abshier.

### C. Abshier's Proffered Testimony Includes Irrelevant, Unreliable, and Confusing Opinion Testimony about Agent Fees.

Finally, Abshier's opinion that "[t]he fees collected by Body Politix were not prohibited under SBA guidance or regulations" should be excluded because it is irrelevant and unreliable, and it will confuse the jury. *See* Dkt. 256-2 at 31-32. On one hand, there is no real dispute over the legal regime surrounding agent fees: the government and Abshier agree that agents could accept fees but that they could not accept fees paid out of the borrower's loan. *Id.* at 32. The government does not allege that agents were prohibited from collecting fees. But the government does allege and will show that Defendant collected kickbacks from the loan proceeds. Since there is no real dispute regarding the legal framework governing agent fees, Abshier's testimony will not help the trier of fact understand the evidence or determine a fact in issue. His attempt to nevertheless offer a broad conclusion about the legality of the fees that Defendants collected through Body Politix is inaccurate and will confuse the jury. It should therefore be excluded.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court exclude the proffered expert testimony of Eric Mills and David Abshier.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*s/ Matthew Weybrecht*
MATTHEW WEYBRECHT
Assistant United States Attorney
State Bar of Texas No. 24102642
Telephone: 817-252-5200
Fax: 817-252-5455
matthew.weybrecht@usdoj.gov

LORINDA I. LARYEA
ACTING CHIEF, FRAUD SECTION

s/ *Philip Trout*
PHILIP TROUT
Acting Assistant Chief
Fraud Section
U.S. Department of Justice

MARGARET A. MOESER
CHIEF, MONEY LAUNDERING & ASSET
RECOVERY SECTION
Criminal Division, U.S. Department of Justice

s/ *Elizabeth R. Carr*
ELIZABETH R. CARR
J. RYAN MCLAREN
Trial Attorneys
Money Laundering and Asset Recovery Section
U.S. Department of Justice

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2025, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney(s) of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ Elizabeth R. Carr*
ELIZABETH R. CARR
Trial Attorney

**Government's Objection to Defense Experts – Page 10**