IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:24 CR-00287-O |
| STEPHANIE HOCKRIDGE, a/k/a STEPHANIE REIS, | § § § § | (02) |
| Defendants. | § § | |

**DEFENDANT STEPHANIE HOCKRIDGE'S MOTION
FOR NEW TRIAL BASED ON NEWLY DISCLOSED *BRADY* EVIDENCE**

Defendant Stephanie Hockridge, by and through the undersigned counsel, moves pursuant to Federal Rule of Criminal Procedure 33(b)(1) for a new trial on the grounds of newly disclosed evidence that the Government had previously failed to produce to the defense, in violation of *Brady v. Maryland*, 527 U.S. 83 (1963), and its progeny. Though the Government intends to use this evidence at sentencing, and although the evidence contains material information that is favorable to the defense, the Government did not provide the evidence to Ms. Hockridge prior to her trial. A new trial is the proper remedy. In support of this motion, Ms. Hockridge respectfully states:

1.  In June 2025, Ms. Hockridge was tried on a five-count indictment alleging that Ms. Hockridge was part of a scheme and conspiracy to commit wire fraud by submitting materially false applications for loans funded by the Paycheck Protection Program (PPP) during the COVID-19 pandemic of 2020 and 20201. *See* Superseding Indictment (Doc. #163). Ms. Hockridge was acquitted of all but the first count of the indictment, which charged a conspiracy under 18 U.S.C. § 1349.

1

2. In support of its allegation that Ms. Hockridge had participated in a conspiracy, the Government relied heavily at trial on the testimony of Eric Karnezis, who claimed that Ms. Hockridge had instructed him on how to falsify loan applications he submitted to Ms. Hockridge. Karnezis was testifying pursuant to a plea agreement, from which he hoped to obtain a more favorable sentencing recommendation from the Government.

3. Karnezis's testimony, and therefore his credibility, were key to the Government's case. Critically, Karnezis testified that he learned how to commit PPP fraud from Ms. Hockridge when he first met her in January 2021. In addition, although Ms. Hockridge introduced communications in which Karnezis provided false explanations to Ms. Hockridge for issues she and her team had discovered in applications submitted through Karnezis's channel, Karnezis testified that those messages were designed to create a "clean" paper trail to cover up Ms. Hockridge's supposed earlier oral instructions about how to commit fraud (of which the Government presented no corroborating evidence).

4. Karnezis's testimony, however, is contradicted by evidence that the Government has only recently produced to Ms. Hockridge's counsel—months *after* trial. In 2023 (more than two years before Ms. Hockridge's trial), the Government conducted several interviews during its investigation into Karnezis: one with Newly Disclosed Government Witness #1 ("GW-1"), **Ex. A**; another with Newly Disclosed Government Witness #2 ("GW-2"), **Ex. B**; and a third with Newly Disclosed Government Witness #3 ("GW-3"), **Ex. C**.[1] GW-3 had submitted falsified loan applications through Karnezis and one of his associates. GW-2 had been a participant in Karnezis's

---

[1] At the Government's request, the names of witnesses in the newly disclosed evidence have been redacted and Ms. Hockridge has contemporaneously filed a motion seeking to file the referenced exhibits under seal.

conspiracy, and he disclosed details about the means and structure of the conspiracy while GW-1 and GW-2 had sat in a jail cell together.

5. Importantly, the newly disclosed interview recordings and transcripts reveal that, contrary to his trial testimony, Karnezis had been assisting others to commit PPP fraud ***before he ever met Ms. Hockridge***.

6. In addition, the newly disclosed evidence undermines several other important aspects of Karnezis's testimony—not only impeaching Karnezis's credibility as a witness, but negating key elements of the Government's case. Examples of those discrepancies include:

- Evidence that Karnezis was involved in a wide-ranging conspiracy to commit PPP fraud (involving corrupt SBA employees, money laundering, and members of the infamous "Bloods" gang) that is vastly different from anything Ms. Hockridge is alleged to have been involved in.

- Evidence that Karnezis's fraudulent actions involved people and transactions totally disconnected from Ms. Hockridge, which undermines the Government's claim that Ms. Hockridge knowingly conspired with Karnezis.

- Evidence that Karnezis charged substantially more for his fraudulent activities than VIPPP charged the borrowers it worked with, which sets him at cross-purposes to Ms. Hockridge and provided a motive for him to hide his activities from her (not to conspire with her).

7. Although the Government has opposed Ms. Hockridge's request for it to produce other investigative materials relating to the three previously undisclosed Government witnesses, *see* Resp. (Doc. #332), the Government offers no explanation for its failure to disclose the newly disclosed evidence before trial as required by the Fifth Amendment. The Due Process Clause requires that the Government disclose evidence in its possession that is (1) favorable to a defendant and (2) material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). This affirmative obligation attaches "irrespective of the good or bad faith of the prosecution." *Id.* The *Brady* doctrine applies both to substantive and impeachment evidence, and it "encompasses evidence known only to police and investigators and not to the prosecutor," such that "the

3

individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in [the] case, including the police." *Strickler v. Green*, 527 U.S. 263, 280–81 (1999) (quotation omitted).

8. Because the newly disclosed evidence undermines essential elements of the Government's case and impeach Karnezis's credibility, they are favorable to Ms. Hockridge's defense.

9. In light of the importance of Karnezis to the Government's case and the contradictions between his testimony and the newly disclosed evidence, the evidence is also material in that it creates a reasonable probability the jury would not have convicted Ms. Hockridge on the sole count on which it returned a guilty verdict had it been made available to the defense. Had the newly disclosed evidence been produced before trial, Ms. Hockridge's counsel could also have engaged in additional investigation regarding the information disclosed in the recordings, reports, and transcripts of the interviews, which may very well have led to the discovery of additional exculpatory evidence beyond what is recited in the recordings, reports, and transcripts themselves. The Government's decision to selectively produce only some of the fruits of its investigation into Karnezis before trial deprived Ms. Hockridge and her counsel of that opportunity.

10. Whether the withheld recordings, reports, and transcripts are considered individually or collectively, the evidence contained within them comfortably satisfies *Brady*'s materiality standard. As the Fifth Circuit has explained, undisclosed evidence must be considered in light of its cumulative effect to assess its "potential impact on the outcome of the trial." *United States v. Sipe*, 388 F.3d 471, 491 (5th Cir. 2004).

11. When the Government violates *Brady* by withholding favorable and material evidence, a new trial is the appropriate remedy. *United States v. Runyan*, 290 F.3d 223 (5th Cir.

2002). No other remedy would be sufficient here to correct for the Government's failure to produce evidence that bears so critically on the credibility of the Government's star witness and the very existence of the conspiracy charged in the indictment.

12. Even if a new trial were not required under *Brady*, the failure to produce such plainly relevant evidence prior to trial, especially when combined with the numerous other irregularities in Ms. Hockridge's trial and prosecution previously identified in her original Motion for New Trial (Doc. #265) and its supporting memorandum (Doc. #269), makes ordering a new trial required by the interest of justice. *See* Fed. R. Crim. P. 33(a); *United States v. Riddle*, 103 F.3d 423, 435 (5th Cir. 1997) ("Looking at the cumulative effect of the errors, we are persuaded that they are not harmless and require a new trial.").

13. A memorandum of law in support of this motion is filed contemporaneously herewith.

WHEREFORE Defendant Stephanie Hockridge respectfully requests that the Court vacate her conviction and order a new trial on Count One of the Superseding Indictment, at which she will have the benefit of the previously undisclosed *Brady* material, and to enter any such other and further relief as the Court may deem just and proper.

Dated: November 6, 2025

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN
MARK A. SRERE
KEVIN H. JENCO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020

*richard.finneran@bclplaw.com*
*mark.srere@bclplaw.com*
*kevin.jenco@bclplaw.com*

*Attorneys for Defendant Stephanie Hockridge*

## CERTIFICATE OF SERVICE

    I hereby certify that on November 6, 2025, a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's CM/ECF system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN